IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT GAUDIO d/b/a SEASONS FOUR MUSIC, ALL SEASONS MUSIC, NEW SEASONS MUSIC, GAVADIMA MUSIC, SEASONS MUSIC; THE FOUR SEASONS PARTNERSHIP, <br><br> Plaintiffs, <br><br> v. <br><br> SPOTIFY USA INC., <br><br> Defendant. | Case No. 3:17-cv-01052 <br><br> District Judge Jon Phipps McCalla <br><br> Magistrate Judge Joe Brown |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR
A MORE DEFINITE STATEMENT**

In support of its Motion for a More Definite Statement, Defendant Spotify USA Inc. ("Spotify") states:

**INTRODUCTION**

Spotify files this Motion For a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). "A more definite statement will be required when 'defendants can only guess as to what conduct . . . an allegation refers.'" *Paragon Fin. Grp., Inc. v. Bradley Factor, Inc*., No. 1:02-CV-222, 2003 WL 23471548, at *13 (E.D. Tenn. Dec. 4, 2003) (citations omitted). That is the case here. Plaintiffs' Complaint unleashes a barrage of words colorfully – and falsely – portraying Spotify as a firm whose "business practices are reminiscent of the primitive illegal file sharing companies." Compl. at ¶ 68. Put plain, Plaintiffs mean to brand Spotify as a new Napster. But that label does not fit. Spotify is a lawful, licensed streaming service, and the

Complaint leaves Spotify guessing with respect to how, and through what conduct, Spotify is alleged to have violated copyright law.

Plaintiffs allege that Spotify "reproduce[s]" and "distribute[s]" Plaintiffs' works, *see* Compl. at ¶ 69, thereby facilely checking the boxes to plead an infringement of the reproduction and distribution rights. But Plaintiffs leave Spotify guessing as to what activity Plaintiffs actually believe entails "reproduction" or "distribution." The only activity of Spotify's that Plaintiffs identify as infringing is its "streaming" of sound recordings embodying Plaintiffs' copyrighted musical compositions. Compl. at ¶¶ 4, 13-14, 16, 21-23, 32, 38, 53-56, 59-60, 63, 67, 69, 71-72. But "streaming" – by its *very definition* – cannot infringe upon either the reproduction right under 17 U.S.C. § 106(1) or the distribution right under 17 U.S.C. § 106(3). As a consequence, Plaintiffs' allegations simply do not inform Spotify how Spotify is alleged to have violated the law.

The Supreme Court recently noted that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). A Rule 12(e) motion is particularly appropriate here, where Plaintiffs' dishonest portrayal of Spotify's (licensed) streaming service as willful infringement on a "staggering scale," and their failure to specify the conduct that is alleged to infringe, is no accident. Compl. at ¶ 6. It is, rather, a bid to interfere with the court-approved settlement in *Ferrick*. *See id.* at ¶ 45. It appears that, by falsely painting Spotify as a new Napster and by holding out the prospect of hundreds of millions of dollars in statutory damages, Plaintiffs and their counsel hope to entice additional class members to opt out. *Id.* at ¶ 76.

"In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion." *Paragon*, 2003 WL 23471548, at *13 (quoting *Newcourt Leasing Corp. v. Reg'l Bio-Clinical Lab, Inc.*, 2000 WL 134700, *1 (E.D. La. 2000)). The Court should exercise that discretion here and oblige Plaintiffs to identify the conduct, either of Spotify or of Spotify's users, that Plaintiffs allege infringes upon Plaintiffs' exclusive rights. Indeed, Plaintiffs' Complaint fails to meet even the liberal pleading requirements of Federal Rule of Civil Procedure 8, because that rule requires "a short and plain statement of the claim *showing that the pleader is entitled to relief.*" Here, without identifying *how* Spotify has allegedly violated copyright laws, Plaintiffs have failed to show that they are entitled to relief. *See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462 (6th Cir. 2015) ("Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' 'A complaint that allows the court to infer only a 'mere possibility of misconduct,' however, 'is insufficient to 'show' that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8.'") (citing *Han v. Univ. of Dayton*, 541 Fed. App'x. 622, 626 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (1937))).

## LAW AND ARGUMENT

### A. Plaintiffs Present A False Narrative In An Attempt To Portray Spotify As A New Napster

According to Plaintiffs' Complaint, Spotify is a new Napster. "Spotify's business practices," Plaintiffs declare, "are reminiscent of the primitive illegal file sharing companies." Compl. at ¶ 68. And Spotify, Plaintiffs declare, "rules the streaming market through a pattern of willful infringement on a staggering scale." *Id.* at ¶ 6. Plaintiffs further assert that "Spotify's illegal behavior and its willful and deliberate disregard of United States Copyright law is clearly demonstrated" and that Spotify has "continued to exploit compositions, including the Infringed

3

Works, without a license to do so and therefore engaged in continuous actionable acts of copyright infringement." *Id.* at ¶¶ 48, 65. Plaintiffs' counsel has said much the same to the public. *See, e.g.*, Janko Roettgers, *Spotify Faces Two New Lawsuits From Music Publishers,* VARIETY (July 18, 2017, 4:09 PM), https://goo.gl/iAk4FZ (claiming that "companies should not be allowed to build businesses on the concept of infringe now and ask questions later.") (copy of pertinent portion of webpage attached hereto as Exhibit 1).

Plaintiffs' narrative is simple and engaging. It is also false. Spotify is a legitimate, licensed streaming company. Established in 2006 and officially launched in the United States in July 2011, Compl. at ¶ 27, Spotify currently does business in 61 countries, *see* https://www.spotify.com/us/select-your-country/, and has over 30,000,000 licensed sound recordings available to stream. Active users streamed 20 billion hours of music in 2015 alone. *See* Marc Schneider, *Spotify's Year in Music*, BILLBOARD (December 1, 2015), https://goo.gl/v4hnS1 (copy of pertinent portion of webpage attached hereto as Exhibit 2). Spotify now has more than 140 million global monthly active users, including 50 million paying subscribers. Compl. at ¶ 22. It has paid over $6 *billion* in royalties to copyright owners. And it has licensing deals with hundreds of copyright owners, including global licensing partnerships with the major record labels Sony Music Entertainment, Universal Music Group, and Warner Music Group.

Plaintiffs falsely portray Spotify as an outlaw or pirate preying upon the music industry. Quite the contrary: Spotify is a recognized player within that industry. Spotify bears no resemblance to Napster, and it is likewise wholly unlike any other "primitive illegal file sharing company" (*i.e.*, Napster, Scour, Aimster, Audiogalaxy, Morpheus, Grokster, Kazaa, iMesh, and

LimeWire). *Id.* at ¶¶ 24, 68. Its business practices bear no resemblance to those piratical and unlawful peer-to-peer networks. Nor does its technology.

In fact, far from committing piracy, Spotify is a major force in driving music sales and keeping piracy under control. *See* Ben Sisario, *Streaming Drives U.S. Music Sales Up 11% in 2016*, N.Y. TIMES (Mar. 30, 2017), https://goo.gl/aCZyWo (copy of pertinent portion of webpage attached hereto as Exhibit 3). Indeed, Spotify's founders explicitly designed Spotify to function as an anti-piracy tool. By offering access to a very large licensed library of content, available for streaming on demand, Spotify makes music available at a price and in a format that people like. The millions of people who get their music legitimately via Spotify have no incentive to pirate it. From its beginning, Spotify was "meant to make paying for music an easier option than piracy." *Through Spotify, Daniel Ek has changed the music industry forever,* EUROPEAN CEO (Aug. 1, 2017), https://goo.gl/3wW3t5 (copy of pertinent portion of webpage attached hereto as Exhibit 4).

Plaintiffs lay out their false story for a practical reason. They want to entice more publishers to opt out of the *Ferrick* settlement. More opt-outs equal a larger number of copyrighted works that Plaintiffs can join to their lawsuits, which means, principally, a larger potential payday for Plaintiffs' counsel. Plaintiffs' Complaint asks for "the maximum amount of statutory damages for willful copyright infringement, $150,000.00 per composition, for each of the musical compositions identified in Exhibit A hereto." Compl. at ¶ 76. Those sort of damages are imaginable only if Spotify is portrayed as a present-day Napster.

Plaintiffs' copyright infringement allegations are purposefully vague, in a way that allows them to be consistent with the false narrative Plaintiffs lay out in their Complaint and that is intended to attempt to avoid dismissal under Rule 12(b)(6) by simply reciting the magic words

"reproduce" and "distribute." Using such words, however, is insufficient because it does not set forth a cogent theory of infringement. Plaintiffs allege that Spotify infringes Plaintiffs' exclusive right to reproduce and distribute copies of the underlying compositions. *See, e.g.*, ¶ 72 ("each stream of the Infringed Works reproduced by Spotify and/or distributed to end-users constitute a separate and distinct act of infringement"); *see also* ¶¶ 4, 14, 16, 32, 55, 59-60, 63, 67, 69, 71.

But Plaintiffs' logical leap from a "stream" to an alleged reproduction or distribution is not adequate to put Spotify on notice of what Plaintiffs are complaining about. Streaming music does not implicate either the reproduction right under 17 U.S.C. § 106(1) or the distribution right under § 106(3) and thus certainly cannot infringe those rights. In fact, courts have acknowledged a key distinction between streaming and downloading — like the downloading facilitated by the "illegal file sharing companies" that Plaintiffs reference in their Complaint. Compl. at ¶ 68. Indeed, streaming is an "alternative to copies or phonorecords." 3 Paul Goldstein, *Goldstein on Copyright* §7.6.1.2 (2017) (copy of pertinent portion attached hereto as Exhibit 5). If a service enables users to download a song, then that service engages in the "reproduction and distribution of a sound recording" and of the musical composition that sound recording embodies. *Flo & Eddie Inc. v. Sirius XM Radio Inc.*, No. CV 13-5693 (PSG) (RZX), 2014 WL 4725382, at *7 (C.D. Cal. Sept. 22, 2014). But if the service *streams* a song, then the stream is an "isolated public performance of a sound recording," and of the musical composition that sound recording embodies. *Id.*; *see also Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166, 1175 (N.D. Cal. 2012) (holding that "the right to *publicly perform* or stream a copyrighted sound recording is different from copyright holder's right to *distribute* copies of the copyrighted work to the public," and noting that Pandora streaming service "operates solely under public performance licenses.") (emphasis in original); *Hearst Stations Inc. v. Aereo, Inc.*, 977 F. Supp. 2d 32, 40 (D.

Mass. 2013) (defendant's technology for streaming programming "more aptly described as 'performing' than 'distributing' copyrighted works.") (citing 3 William F. Patry, *Patry on Copyright* § 8:23 (2013) ("The distinction between a performance and a distribution should be drawn by reference to the type of transmission involved: if the transmission delivers a copy of a work to a consumer in non-real time, it is a distribution. If streaming or other real-time conduct is involved, it is a performance.")); *United States v. Am. Soc'y of Composers, Authors & Publishers*, 485 F. Supp. 2d 438, 444 (S.D.N.Y. 2007) (finding that digital downloads implicated reproduction rights and not public performance rights); 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 8.14[B][3] (2017) ("The act of streaming constitutes a public performance; the act of downloading, by contrast, does not.") (copy of pertinent portion attached hereto as Exhibit 6).

In short, the act of streaming *does not reproduce copies* of sound recordings or musical compositions, and equally *does not distribute copies* of either sound recordings or compositions. This is not to say that streaming has no copyright consequence. Streaming does result in a *public performance* of both sound recordings and musical compositions. *See* 17 U.S.C. § 106(4) (granting copyright owner the exclusive right to "perform the copyrighted work publicly" in the case of musical works) and § 106(6) (granting copyright owner the exclusive right to "perform the copyrighted work publicly" in the case of sound recordings); *see also Deacon*, 901 F. Supp. 2d at 1175; *Hearst Stations*, 977 F. Supp. 2d at 40; Patry, *supra*, § 8:23. But Plaintiffs do not allege that Spotify has violated their public performance rights, and such an allegation would be futile. Spotify has paid hundreds of millions of dollars to license the public performances of the musical compositions it streams, including those allegedly owned by Plaintiffs, through negotiated licenses administered via ASCAP, BMI, SESAC, and GMR – a group of licensing agents known collectively as "performance rights organizations" or "PROs." In sum, Plaintiffs'

7

Complaint, which rests upon Spotify's "streaming," leaves Spotify guessing about what it has done that, in Plaintiffs' view, constitutes a violation of Plaintiffs' reproduction and distribution rights.

If Plaintiffs are indeed alleging an instance of copying (as opposed to streaming) that allegedly violates Plaintiffs' reproduction and/or distribution rights, they can amend their Complaint to say so. Depending on what that allegation is, Spotify will advance a number of defenses. If Plaintiffs' real complaint is with, for example, a particular instance of alleged temporary copying, then, among other things, Spotify may assert a defense of fair use. Spotify may also assert defenses of compulsory license, implied license, negotiated license with copyright owner or co-owner, statute of limitations, and others, depending on the nature of the specific allegations. But Spotify should not be forced to guess and aim its defenses at an unknown claim. Spotify believes that every element of its service is either fully licensed or otherwise permitted by law, and Plaintiffs' Complaint offers no notice as to what Spotify conduct it thinks violates its copyrights or what conduct would require additional licenses.

By granting this Motion and requiring Plaintiffs to identify the conduct they claim infringes, this Court will provide Spotify with a fair chance to evaluate the strength of Plaintiffs' claims. In Spotify's view, an order by this Court requiring Plaintiffs to identify specific infringing conduct is likely to result in a revised complaint that tells a very different story. A complaint that pleads with the required specificity would no longer be a narrative about how Spotify's streaming service is a new Napster. It would be a narrative inconsistent with the false claim that Spotify engages in willful, "staggering" levels of "piracy." It would be a narrative vulnerable to a set of powerful defenses. And it would be a narrative that makes clear that even if

Plaintiffs ultimately establish some measure of liability, their efforts will not result in anything resembling the enormous statutory damages that Plaintiffs' lawyers demand.

That last point is important. Plaintiffs are dangling before the *Ferrick* class members the prospect of hundreds of millions of dollars in statutory damages against their purported "new Napster." It requires a measure of sophistication and a comprehension of the intricacies of copyright law to understand that Plaintiffs' story simply doesn't add up. Plaintiffs owe Spotify, and this Court, an honest account of what Spotify is alleged to have done that, in Plaintiffs' view, infringes Plaintiffs' rights. Once Plaintiffs provide those specific allegations, Spotify will respond appropriately. In the absence of those specific allegations, Spotify simply cannot respond.

## CONCLUSION

For the reasons set forth above, Spotify respectfully requests that this Court require Plaintiffs to file a more definite statement sufficient to put Spotify on notice of Spotify's conduct that allegedly infringes upon Plaintiffs' rights under the Copyright Act.

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

/s/ Samuel F. Miller
Samuel. F. Miller (TN BPR #22936)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-5594
Facsimile: (615) 744-5594
Email: smiller@bakerdonelson.com

SIMPSON THACHER & BARTLETT LLP

Jeffrey E. Ostrow (CA BPR #213118, Admitted Pro Hac Vice)
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5030
Facsimile: (212) 455-2502
Email: jostrow@stblaw.com

Christopher J. Sprigman (NY BPR #CS7310, Admitted Pro Hac Vice)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-7844
Facsimile: (212) 455-2502
Email: christopher.sprigman@stblaw.com

*Counsel for Defendant Spotify USA Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2017, a copy of the foregoing *DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR A MORE DEFINITE STATEMENT* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Richard S. Busch
King & Ballow
315 Union Street, Suite 1100
Nashville, Tennessee 37201
rbusch@kingballow.com

John E. Mason, Jr.
Law Office of John Mason, LLC
40 Music Square West
Nashville, Tennessee 37203

/s/ Samuel F. Miller
Samuel. F. Miller